UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT K., Jr., a Minor, and BRETT K. Sr., and HEATHER K., Individually and as Parents and Next Friends of BRETT K., <br><br> Plaintiffs, <br><br> v. <br><br> MOMENCE COMMUNITY UNIT SCHOOL DISTRICT NO. 1, <br><br> Defendant. | No. 06 C 3353 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I.     BACKGROUND**

Plaintiffs Brett K., Jr. and his parents (collectively "Plaintiffs") live in Momence School District where Brett is enrolled. Brett was 9 at a the time of a hearing that determined that he was eligible for special education for the condition of "Autism, Mentally Impaired, Speech/Language Impaired." The child is essentially non-verbal and incontinent. There is a history of actions taken with respect to the child but this case concerns events beginning in 2005.

Brett's father is a carpenter. His mother remains in the home as parent to Brett and three younger children.

In April, 2005 the parents and the Momence School District ("District or "Defendant") completed an Individualized Education Program ("IEP") that placed Brett in the Blue Cap School, a private therapeutic day school in Blue Island, about 50 miles from Momence. The District thought this was the closest available appropriate program. The District was to provide transportation and an individual aide to be with Brett and assist the teacher through the day. The

IEP team did not authorize the presence of an aide on the bus transporting the child. During the summer of 2005, Brett's mother drove him to school on most days and a school bus was used on other days. The travel time in the car was an hour or less; the bus took longer—an hour to an hour and fifteen or thirty minutes. The parents sought a due process hearing on the IEP.

The post-IEP events led to a settlement agreement in July, 2006, which adopted the results of the IEP. It did not refer to precise methods of transportation other than mileage for the mother during June and July when she drove to Blue Cap. It did say that the District would pay for the support of an individual aide to ride the bus with Brett and serve as the classroom assistant unless the parties otherwise agree.

The parties are satisfied with Blue Cap and agree that it is the appropriate placement and that there is no alternative and appropriate placement closer to Brett's home.

The dispute is over transportation, a dispute that started at the very beginning of the process. The District does not own or operate its own buses. It contracts out the service. I infer that Brett's transportation situation was not unique in comparison to the transportation needs of all other students. Indeed the District is geographically large and many students spend an hour or more on the bus.

For the 2005-06 school year, the District arranged for a school bus from a neighboring district to transport Brett to Blue Cap. That bus picked Brett up first, then three other children from another district, and dropped off all of the children at schools in Cook County with Brett coming last off the bus. Brett was delivered to Blue Cap before it opened and he was not allowed in the building even when his classroom aide was at the school. This meant that Brett remained on the bus in the parking lot an additional twenty to thirty minutes.

Transporting the child was complicated in other ways as well. The District did eventually provide an aide to be on the bus with Brett, but did not do so initially. The bus driver told the District that the aide was needed and thereafter it was provided. There was also a problem with the harness of the child on the bus: it chafed. The bus contractor advised the District what kind of harness would work and the district provided one to the bus driver. The driver did not use it because it was too small; the driver improvised methods to reduce chafing by using the heavier winter clothing.

The parents reinstated the due process hearing request which raised two issues concerning transportation: (1) putting the child on a bus that had route which could require up to two hours of travel in each direction; and (2) providing an inadequate restraint leading to a risk of self-injury and abrasions. They asked that both of these problems be eliminated and asked for compensatory services, to wit, behavioral consultant services.

Settlement talks started which led to the July 2006 settlement. The District offered, in writing, three options and the parents thought option 1 might be acceptable. The District proposed transporting Brett without having the delay engendered by picking up, as the bus did, other students in Manteno. This, the District noted, would require it to acquire its own vehicle and to hire a driver. A new better harness would be acquired as well.[1] The parents responded, in writing from their attorney, that Option 1 was acceptable with two additional items: (a) thirty hours of compensatory services in the form of behavioral therapy, at a cost of $3,000; and (b)

---

[1] The other options were that the District would start its own program for children like Brett, which the District was starting on the path to do (Option 2); and just purchasing a new harness (Option 3).

payment of the reasonable attorneys' fees incurred by the parents.[2]  But the parents noted their understanding that at least one of the additional terms was not acceptable to the District, and so the hearing would go forth.[3]

At the hearing many facts were agreed to.  Brett engages in difficult behaviors—head butting, biting his fingers, thrashing on the floor and crying.  He does these things at both school and at home.  What was disputed is whether the acting out was made worse by the transportation process.  It was conduct in the morning that was most significant because it was assumed that if the bus ride made things worse for Brett, it would be manifested to his teachers earlier rather than later in the day.  The teachers, of course, did not see Brett much after the ride home. The school kept a log which was put into evidence.  The evidence can be read in more than one way.

The teachers say that, despite acting out, Brett got through his programs in the morning. The parents point out that the log shows many more incidents in the mornings.  The classroom aide reported acting out and other difficulties as often or more often in the afternoons.  There was testimony of Blue Cap staff that acting out might have become more intense as a result of extended travel times and that it took 15 to 20 minutes, sometimes longer, for Brett to settle down in the mornings.  The Blue Cap director thought that the travel times probably did affect

---

[2]There is no dispute as to the range of hourly rates of attorneys who represent parents in special education cases: for senior partners it is $290-325; for associates it is $145-225; and for paralegals it is $85-105.  The dispute in this case is whether Plaintiffs are prevailing parties.

[3]I wish to note here the unsatisfactory nature of the statements of material facts and responses that both parties submitted.  Some of the purported facts are opinions, not facts.  So too are some of the responses to the other side's statements of facts.  In addition, there are too many non-material facts included in the statements, by which I mean facts of which neither side makes any use in their arguments.

his behavior but had no way to determine whether it was a minor factor or a major one since she had no comparative data.

Brett's mother did see Brett at the end of the day and she found him so irritable and tired upon his return that she did not take him to private speech therapy or out into the community as she had in the past.

Everyone agrees that Brett made progress at Blue Cap (except for incontinence), but the parents assert that he would have made more progress but for the transportation problems.

So it was a contest between two competing views of precisely what happened and precisely why it happened; both sides had evidence to support their position.

The hearing officer found against the parents and for the district.[4]

She found:

> The District worked with Manteno District, the Kankakee Co-op and Blue Cap to determine ways to shorten Student's travel time and appeared genuinely responsive to Parent's concerns. [The length of travel time is caused by several factors] the dearth of specialized programs in the rural Momence area. . . . traffic congestion . . . inclement weather . . . railroad crossings and delays caused by trains . . . refusal by Blue Cap to allow Brett in the building before 9:15 a.m. and refusal by Blue Cap to allow for an earlier travel time for Brett . . ."

The actions of Blue Cap were important to the her decision. The decision said "[T]he District also engaged in several attempts to arrange for Student to enter Blue Cap prior to 9:15 a.m., including ensuring school staff that the aide who accompanies Student on the bus would remain with him until he is received by teachers." This earlier entry would have cut Brett's travel time by several minutes. The classroom aide paid for by the District arrives at 8:45 a.m.

---

[4] The decision was issued on February 22, 2006, which the hearing officer had explained was delayed because of her illness which would lead to her resignation as a hearing officer.

and could accept Brett into school. Blue Cap refused to allow this. The Hearing Officer observed that the aide hired to travel on the bus with Brett (who was a retired special education teacher) "would sit beside him and focus his attention on something else if she noticed an impending delay or was alerted to a detour . . ." and "Blue Caps Director attributed the positive change in Student's demeanor to [the retired teacher's] presence during the bus ride."

The harness, found to be an initial problem, was solved when Brett started wearing a winter coat and observed that the harness must be replaced prior to the onset of warm weather.

The overall legal and factual conclusion of the hearing officer was that the record does not support the contention that the District denied Brett a free, appropriate public education ("FAPE"). The hearing officer found no denial of a FAPE due to the type or route of the transportation, or because the harness used earlier in the year caused chafing for a short period of time. It was further found that "there are no grounds for Parents' demand that the District continue to provide individual transportation for the Student, particularly in light of the fact that District acquiesced in Parents' placement choice."

The Hearing Officer ordered the parties to convene an IEP meeting to formally amend the IEP to include a provision for a bus aide. This would reflect the actual operation of the arrangement but gives Brett and his parents a written acknowledgment of the obligation. This was ordered because she found "the record supports Parents' contention that Student requires a trained aide to attend to his emotional and disability-related needs during his travel to school." The IEP team was also to reconsider Brett's toileting goal in light of the travel time, which it did. The parties were ordered to consult with Blue Cap and the Kankakee Cooperative staff to see if Brett could be accommodated in the before-school program to shorten his morning travel time.

Consultation over the proper harness was also ordered, as was its availability to Brett. Compensatory services were not ordered.

Thereafter the IEP was modified to add this: "District will provide transportation with the use of a bus aide and use of harness/restraint. Selection of restraint to be agreed upon by the district and mom."

Plaintiffs ask that the hearing officer's decision be overturned (Count I) and, if that fails, they ask to be awarded their attorney fees for the relief they did secure.

I am not asked to hear additional evidence. The only matters presented to me and not to the hearing officer pertain to what happened to the IEP after the hearing officer ordered changes and re-considerations. These facts are not in dispute.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Individuals with Disabilities Education Act ("IDEA") dictates that the district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Since, as noted above, neither party asked me to hear additional evidence, "[t]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994). The party challenging the outcome of the state administrative decision—Plaintiffs in this case—bears the burden of proof. *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997) (*citing Board of Educ. of Cmty. Consol. Sch. Dist. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 716 (7th

Cir.1991). Plaintiffs' burden of proof on summary judgment notwithstanding, I owe reasonable deference to the decision of the hearing officer. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 206 (1982) (holding that the district courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review); *Heather S.*, 125 F.3d 1045, 1052-53 (7th Cir. 1997). With respect to attorneys fees, I apply conventional rules of summary judgment. As is typical in these cases, both sides ask for summary judgment on the record already made at the hearing plus a few stipulated facts.

B. *Plaintiffs' Argument Against the Hearing Officer's Decision*

Plaintiffs offer two arguments against the hearing officer's decision. First, the hearing officer said "a significant factor in this decision is that Parents had the decisive role in determining Student's placement at Blue Cap with full knowledge that the school is about one hour from Student's home." This, it is said, means the hearing officer found Plaintiffs had waived objection. The hearing officer had also noted that parents had objected to a placement at Easter Seals which was closer to home.

The undisputed fact, based on the hearing record and the actions after decision, is that Blue Cap is the closest appropriate placement. I read the hearing officer's decision the to say and to mean that there is no getting around the fact that Brett will have to spend about an hour on the bus each way to attend Blue Cap. This correctly narrows the issues to the arrangements that added more time on the bus than was necessary to go to school. The hearing officer did not expressly invoke either laches or estoppel as Plaintiffs claim she did. Plaintiffs have not sustained their burden of proving that she used an improper legal standard. At best, Plaintiffs

have shown that the hearing officer used language that suggests she applied waiver rules. Reading the decision as a whole, however, leads to the opposite conclusion: that her statement was directed to establishing the correct scope of the issues she was to address. Her orders to the parties reflected her understanding of the relatively narrow nature of the dispute.[5] She ordered a review of alternative placements in the event one existed at a time after her decision which was made after some delay. She ordered an attempt to solve the problem imposed by Blue Cap whose policies added to time on the bus and, considering the inevitability of substantial travel times, ordered review of one of the child's goals.

The second argument is that the hearing officer did say there was "no evidence" to support claims that the time on the bus had a negative impact on Brett's educational opportunities. It is true that the hearing officer used these words, but Plaintiffs misread them. There was evidence that Brett's acting out was exacerbated by time on the bus, but that evidence could be rejected as speculative. An opinion that extra time in transit probably caused more acting out was not strongly voiced and essentially eviscerated by the same witness who noted the absence of comparative data. Blue Cap people said that Brett was getting through his programs. There was evidence that progress was not being made with respect to "toileting" because of the extended bus ride, but it is not at all clear from the record that an hour ride would not have led to some of the same results. The incontinence was not raised in the original due process request for relief, so the failure to deal with incontinence alone could not be the sole subject of relief. The

---

[5]As these special education disputes go, this was a limited disagreement. Often the basic decision of what is the diagnosis of the child's condition and the chosen placement are bitterly disputed. The fact that everyone agrees that Blue Cap is the closest appropriate placement and it is about an hour from the home does substantially narrow the dispute and it is not surprising that a hearing officer would remark on this point.

facts respecting incontinence could be considered along with the other indicia of progress in deciding whether the transportation plan was, on the whole, deficient.

There was evidence that at home after school the child was less able to engage in activities, but there was no showing that this directly impacted his educational opportunities that must be provided by the public schools. The hearing officer found there was no evidence on which she could rely to prove the claims. This was her right.

Plaintiffs had a difficult case to make. Under the best case, given the location of the nearest appropriate placement, the child would have to spend an hour in a car each way to school. What Plaintiffs sought to show was that the bus was worse than the car (which might have been difficult to do considering the child's cognitive impairments). Alternatively, Plaintiffs sought to show that an extra half-hour or hour on the bus was bad enough to interfere with his education. The flaw in the parents case is that they had no good comparative evidence to offer other than the subjective impressions of one parent. The record contains reliable evidence (the Blue Cap journal) that Brett did not, in fact, act out after arriving at school on a significant number of days. And there is undisputed evidence that he acted out in the afternoon rather than the morning on as many, or nearly as many, days.

Even if one accepts, and it is not hard to do so even without good proof, that more time on the bus causes more acting out, it is not enough to make the case. The whole claim rested on a premise not proved in this case: that increased acting out actually interfered with his appropriate education. The evidence from Blue Cap does not support this conclusion. It is true that it is hard to educate a student who is banging his head against some surface. But all children, even the most gifted, will at times be inattentive, unwilling to learn, or even to act out. Some part of

almost every child's day in school will be unproductive. The model on which this child's case is based is one of calm, attentive learning within the parameters of his ability, which is a model (equally applicable to genius children) rarely, if ever achieved. From this model, Plaintiffs argued that increased acting out interfered with Brett's education. However, the parents failed to prove the validity of the model as applied to Brett. The parents had to show that more acting out led to less progress (except with respect to one goal which I have already discussed) and that, according to the evidence from Blue Cap, they failed to do. [6]

I decline to overturn the hearing officer's decision.

C. *Attorneys' Fees*

The remaining issue is Plaintiffs' argument for attorneys' fees.

The IDEA has a fee-shifting provision for prevailing plaintiffs. 20 U.S.C. § 1415(i)(3)(B) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.")

---

[6] There are individual incidents upon which the parents relied. There was an initial failure to provide an aide on the bus; this failing was repaired as a result of communication from a school bus driver from another school district. It is true that the District made a poor judgment initially with respect to such an aide, but the error was promptly corrected within a single day without the need for hearing or other process. There was also a time when the child had a bowel movement, probably before he got to school, and one could infer it happened on the bus. However, there is no evidence regarding whether it happened with the first hour on the bus or thereafter. This had serious consequences for a child as impaired as Brett who suffered a severe rash lasting a week. Even if this incident had occurred during the second hour on the bus, a single incident would not justify the relief requested.

Defendant argues that Plaintiffs did not prevail. Plaintiffs asked for a finding that a free, appropriate public education had not been provided because of the inadequate transportation services and the poor harness. The hearing officer rejected both claims outright.

Some fees are not awarded when the school district offers, in writing, a settlement that turns out to be as favorable as the remedy ordered by a hearing officer. The settlement must be made more than 10 days before the hearing and, if it is not accepted within 10 days, it is deemed rejected. 20 U.S.C. § 1415(i)(3)(D).

The settlement offer bar to attorney fees probably should not help Defendant here. The ten day period is intended to prevent the school district from forcing plaintiffs to expend fees—at least, to prepare for hearings and to appear on the appointed day—and then preclude recompense by offering at the last minute to give plaintiffs some or all of the relief that they have sought and might well get at the hearing. The purpose of the statute is, of course, broader than the ten day period requirement. It is a disincentive to plaintiffs' counsel to build up fees and collect them for going to hearing on a clearly winning case by refusing to settle for what his or her clients might get anyway. The ten day requirement is there to save everyone in the case time and money and this includes the plaintiffs and their lawyers.

In this case, the settlement offer was made on the eve of hearing. On the day of the hearing, all of the parties, the hearing officer, and Plaintiffs' counsel were present. The costs and inconvenience of preparing and appearing for hearing were not avoided. The District's attorney was ill but it is difficult to see how this fortuitous circumstance should allow the District to avoid its obligation to tender the settlement offer ten days before the hearing as a condition of avoiding fee shifting.

This situation though is, I assume, sufficiently rare that there is no need to decide this question of statutory interpretation, particularly since the settlement agreement did not offer all that was ordered.

The hearing officer ordered that the IEP be revised to include a written requirement of an aide on the bus and no more than two other students. She ordered, as I read it, that an appropriate harness be found and provided, although she used language requiring process rather than language requiring action. She then ordered reconsideration of "toileting" goals—an issue not raised in the request for a hearing. She ordered another attempt to get Blue Cap to let Brett in the building when he arrived. The three settlement offers, Defendant argues, included all these things, but this is not so. The settlement proposals did offer a resolution of the harness issue. This was one of the two issues properly before the hearing officer.

The District did not offer written assurance of an aide on the bus, though it is understandable that it did not think this was a live issue since it was providing the service. But the written provision in the IEP is worth something to the parents, particularly if personnel in the district changes over time. This establishes that Plaintiffs were a prevailing party.

The question, though, is whether the relief awarded is worth anything more than *de minimus* value. The Supreme Court teaches that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992). The Court observed that "[i]n some circumstances, even a plaintiff who formally prevails . . . should receive no attorney's fees at all." *Id.* at 115. The Court has also said that "the most critical factor in determining the reasonableness of a fee award is the degree

of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *De minimis* relief in insufficient to warrant an award of attorneys' fees under the statute. *See Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) ("[W]hen a plaintiff's success is simply technical or *de minimis*, no fees may be awarded, even if the plaintiff . . . [is] technically a 'prevailing party.'"). The judgment of whether the relief was too small to count should be made in light of what was litigated. Here Plaintiffs lost on the major issue they raised. There was no change at all in the actual circumstances of Brett's transport to school. The District conceded all along that the child ought to have a harness that did not chafe. The District did provide an aide on the bus except for the morning ride on the first day the bus was used.[7] While language in the IEP is helpful, it is the actions of the District that overwhelmingly matter. Based on the law in this Circuit, Plaintiffs are not entitled to attorneys' fees. *See Linda T.*, 417 F.3d at 707-09; *see also Farrar*, 506 U.S. at 117 (O'Connor, J., concurring) (holding that the reasonable fee award for a prevailing plaintiff who obtains only a "Pyrrhic victory" is zero); *Monticello Sch. Dist. No.25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996).

The defendant's motion for summary judgment is granted.

The plaintiffs' motion for summary judgment is denied.

ENTER:

---

[7]Plaintiffs argues that the provision of the aide should not count for much because "the provision of an aide occurred because of a phoned demand by the bus driver and at no time did the school district offer to amend Brett's IEP." Someone working as an agent for the District, as opposed to a parent, made the demand. In addition, the demand was complied with on the same day it was made. Doing what is required before the parents complain is to the District's credit. I believe that these facts mean that the District's action should count for more.

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 30, 2007